IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODERICK EMIL WHITLEY | § | |
| *Plaintiffs*, | § | |
| | § | CASE NO. 3:25-cv-3287-X |
| v. | § | |
| | § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*. | § | |
| | § | |

**DEFENDANT DALLAS INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFF RODERICK WHITLEY'S COMPLAINT AND BRIEF IN SUPPORT**

/s/ *Kathryn E. Long*
KATHRYN E. LONG
klong@thompsonhorton.com
State Bar No. 24041679

K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

DEANNA E. CALDWELL
dcaldwell@thompsonhorton.com
State Bar No. 24069455

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for Defendant*
*Dallas Independent School District*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iv

SUMMARY OF THE ARGUMENT ........ 1

RELEVANT FACTUAL ALLEGATIONS ........ 2

STANDARD OF REVIEW ........ 4

ARGUMENT AND AUTHORITIES ........ 5

I. The Complaint does not state a plausible retaliation claim because there are no well-pleaded facts to show Whitley engaged in Title VII or ADA protected activity or that any protected activity caused an adverse employment action. ........ 5

A. Standard for a Title VII and ADA retaliation claim. ........ 5

B. Whitley does not plausibly allege that he engaged in protected activity prior to the end of his employment with Dallas ISD and, therefore, he cannot show he suffered an adverse employment action because of such activity. ........ 6

C. The Complaint does not plausibly allege that Whitley's Summer 2023 communications with an assistant principal were protected activity or caused an adverse employment action. ........ 7

II. The Complaint lacks well-pleaded facts to state a plausible disability discrimination or interference claim under the ADA. ........ 10

A. Whitley fails to plead any facts to show he was subjected to an adverse action based on his disability to support a disability discrimination claim. ........ 10

B. Whitley has not pleaded any facts to support a claim for interference with his rights under the ADA. ........ 13

III. The Complaint lacks well-pleaded facts to support a Title VII or ADA hostile work environment claim. ........ 14

IV. Whitley has not pleaded any facts to support a claim for interference with his rights under the FMLA, and the Court should dismiss his FMLA claim. ........ 17

V. Whitley does not state a Fourteenth Amendment claim because he does not allege an underlying violation of his due process rights or that an official Board policy or custom was the moving force behind an alleged due process violation. ........ 19

A. Overview of entity liability under Section 1983. ........ 19

B. The Complaint pleads no facts that Whitley had or was deprived of a constitutionally-protected interest. ........ 21

C. Whitley does not plausibly allege that an official policy or custom of the District's Board was a moving force behind a violation of his due process rights. ........ 22

D. Whitley's attempt to invoke a ratification theory of Section 1983 entity liability fails because he pleads no facts that the District's Board ratified any unconstitutional conduct. .......... 24

CERTIFICATE OF SERVICE .......... 26

# TABLE OF AUTHORITIES

## Cases

*Acker v. General Motors, L.L.C.*,
853 F.3d 784 (5th Cir. 2017) ........ 13

*Alusi v. City of Frisco, Tex.*,
No. 4:22-CV-397-SDJ, 2023 WL 5509307 (E.D. Tex. Aug. 24, 2023) (mem. op.) ........ 7–8

*Arismendiz v. Univ. of Tex. at El Paso*,
536 F. Supp. 2d 710 (W.D. Tex. 2008) ........ 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4, 12

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
520 U.S. 397 (1997) ........ 21

*Beavers v. Metro. Life Ins. Co.*,
566 F.3d 436 (5th Cir. 2009) ........ 4

*Becerra v. Asher*,
105 F.3d 1042 (5th Cir. 1997) ........ 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Bennett v. City of Slidell*,
728 F.2d 762 (5th Cir. 1984) ........ 20, 21

*Berrios v. Miller*,
No. EP-22-cv-00139-DCG-MAT, 2024 WL 40218 (W.D. Tex. Jan. 3, 2024) ........ 11

*Burlington N. & Sante Fe Ry. Co. v. White*,
548 U.S. 53 (2006) ........ 6

*Caldwell v. KHOU-TV*,
850 F.3d 237 (5th Cir. 2017) ........ 18

*Campbell v. City of San Antonio*,
43 F.3d 973 (5th Cir. 1995) ........ 24

*Cantwell v. Sterling*,
788 F.3d 507 (5th Cir. 2015) ........ 4

*Carter v. Target Corp.*,
541 F. App'x 413 (5th Cir. 2013) ........ 6

*Chhim v. Univ. of Tex. at Austin*,
836 F.3d 467 (5th Cir. 2016)....................5

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988).................... 20, 23

*Cnty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................21

*Davis v. Dall. Indep. Sch. Dist.*,
448 F. App'x 485 (5th Cir. 2011)....................6, 8

*Donaldson v. CDB Inc.*,
335 F. App'x 494 (5th Cir. 2009)....................15

*EEOC v. WC&M Enters., Inc.*,
496 F.3d 393 (5th Cir. 2007)....................14

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1988)....................15

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015)....................24

*Flowers v. S. Reg. Phys. Servs., Inc.*,
247 F.3d 229 (5th Cir. 2001)....................15

*Gaumond v. City of Dall.*,
No. 3:21-CV-00624-E, 2023 WL 2061170 (N.D. Tex. Feb. 15, 2023) (mem. op.)....................10

*Green v. Brennan*,
578 U.S. 547 (2016).................... 8, 9, 12

*Groden v. City of Dall., Tex.*,
826 F.3d 280 (5th Cir. 2016)....................20

*Hamilton v. Dall. Cnty.*,
79 F.4th 494 (5th Cir. 2023)....................6

*Hernandez v. Yellow Transp., Inc.*,
670 F.3d 644 (5th Cir. 2012).................... 14–15

*Hill v. Silsbee Indep. Sch. Dist.*,
933 F. Supp. 616 (E.D. Tex. 1996)....................22

*Hughes v. City of Garland*,
204 F.3d 223 (5th Cir. 2000)....................22

*Jett v. Dall. Indep. Sch. Dist.*,
798 F.2d 748 (5th Cir. 1986) ........................................ 20, 24

*Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*,
90 F.4th 449 (5th Cir. 2024) ........................................ 6

*Kemp v. Univ. of Tex. Health Sci. Ctr. NE*,
No. 6:18-CV-00057-RWS, 2018 WL 11486505 (E.D. Tex. July 5, 2018),
*rec. adopted*, 2018 WL 11486504 (E.D. Tex. Aug. 18, 2018) ........................................ 16

*Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*,
512 F.3d 157 (5th Cir. 2007) ........................................ 9

*Leffall v. Dall. Indep. Sch. Dist.*,
28 F.3d 521 (5th Cir. 1994) ........................................ 20

*Long v. Eastfield Coll.*,
88 F.3d 300 (5th Cir. 1996) ........................................ 5

*Lumpkin v. Credit Human Fed. Credit Union*,
No. 5:24-cv-00842-FB-RBF, 2025 WL 2647277 (W.D. Tex. Aug. 25, 2025) ........................................ 8

*Lyons v. Katy Indep. Sch. Dist.*,
964 F.3d 298 (5th Cir. 2020) ........................................ 5

*Martin v. Penske Logistics, LLC*,
736 F. Supp. 3d 437 (N.D. Tex. 2024) ........................................ 10

*Matson v. Sanderson Farms, Inc.*,
388 F. Supp. 3d 853 (S.D. Tex. 2019) ........................................ 18

*Monell v. New York City Dep't of Soc. Servs.*,
436 U.S. 658 (1978) ........................................ 20

*Moore v. NBC Univ. Media, LLC*,
No. 4:24-cv-01120-O-BP, 2025 WL 2308870 (N.D. Tex. May 19, 2025),
*rec. adopted*, 2025 WL 1863113 (N.D. Tex. July 7, 2025) ........................................ 9, 16

*Mosley v. Marion Cnty.*,
111 F. App'x 726 (5th Cir. 2004) ........................................ 16

*Moye v. Tregre*,
No. 22-30341, 2024 WL 65424 (5th Cir. Jan. 5, 2024) (per curiam) ........................................ 6

*Paske v. Fitzgerland*,
785 F.3d 977 (5th Cir. 2015) ........................................ 6, 8

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) ........................................ 20, 21

*Pena v. Dall. Police Ass'n*,
No. 3:22-CV-0987-N-BH, 2023 WL 2146557 (N.D. Tex. Jan. 17, 2023),
*rec. adopted*, 2023 WL 2143087 (N.D. Tex. Feb. 21, 2023) .......... 16

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) .......... 20, 24, 25

*Phillips v. HCA Healthtrust*,
No. 3:19-cv-2642-D-BN, 2020 WL 5636947 (N.D. Tex. Aug. 19, 2020),
*rec. adopted*, 2020 WL 5633852 (N.D. Tex. Sept. 21, 2020) .......... 5–6

*Piotrowski v. City of Hous.*,
237 F.3d 567 (5th Cir. 2001) .......... 20, 24

*Raj v. La. State*,
714 F.3d 322 (5th Cir. 2013) .......... 15, 17

*Rathjen v. Litchfield*,
878 F.2d 836 (5th Cir. 1989) .......... 23

*Rivera v. Hous. Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir. 2003) .......... 20, 21, 24

*San Jacinto Sav. & Loan v. Kacal*,
928 F.2d 697 (5th Cir. 1991) .......... 21

*Santibanes v. City of Tomball*,
654 F. Supp. 2d 593 (S.D. Tex. 2009) .......... 24

*Smith v. Lattimore Materials Co.*,
287 F. Supp. 2d 667 (E.D. Tex.), *aff'd sub nom.*,
*Smith v. Lattimore Materials*, 77 F. App'x 729 (5th Cir. 2003) .......... 8

*Soledad v. U.S. Dept. of Treasury*,
304 F.3d 500 (5th Cir. 2002) .......... 16

*Spuler v. Pickar*,
958 F.2d 103 (5th Cir. 1992) .......... 21

*Stover v. Hattiesburg Pub. Sch. Dist.*,
549 F.3d 985 (5th Cir. 2008) .......... 9

*Strife v. Aldine Indep. Sch. Dist.*,
138 F.4th 237(5th Cir. 2025) .......... 13

*Stringer v. N. Bolivar Consol. Sch. Dist.*,
727 F. App'x 793 (5th Cir. 2018) .......... 10

*Thackston v. Driscoll*,
No. SA-24-CV-00276-FB, 2025 WL 938853 (W.D. Tex. Mar. 11, 2025) ................................ 16–17

*Thomas v. Smith*,
897 F.2d 154 (5th Cir. 1989) ........................................................................................ 22

*Thompson v. Microsoft Corp.*,
2 F.4th 460 (5th Cir. 2021) ........................................................................................ 14

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ........................................................................................ 7

*Van Deelenv. Cain*,
628 F. App'x 891 (5th Cir. 2015) ........................................................................................ 4

*Vargas v. Panini America, Inc.*,
No. 3:23-cv-2689-B, 2025 WL 1347479 (N.D. Tex. May 8, 2025) ........................................ 16

*Vicari v. Ysleta Indep. Sch. Dist.*,
291 F. App'x 614 (5th Cir. 2008) (per curiam) ........................................................ 23

*Walker v. Beaumont Indep. Sch. Dist.*,
938 F.3d 724 (5th Cir. 2019) ........................................................................................ 4

*Wells v. Hico Indep. Sch. Dist.*,
736 F.2d 243 (5th Cir. 1984) ........................................................................................ 22

*Wilkerson v. Univ. of N. Tex.*,
878 F.3d 147 (5th Cir. 2017) ........................................................................................ 21

*Wright v. Union Pacific R.R. Co.*,
990 F.3d 428 (5th Cir. 2021) ........................................................................................ 5

**Statutes**

42 U.S.C. § 1983 ........................................................................................ *passim*

42 U.S.C. § 2000e–3(a) ........................................................................................ 57

42 U.S.C. § 12203(a) ........................................................................................ 5

TEX. EDUC. CODE § 11.051(a) ........................................................................................ 20

TEX. EDUC. CODE § 11.051(a-1) ........................................................................................ 20

TEX. EDUC. CODE § 11.151(b) ........................................................................................ 20

**Other Authorities**

FED. R. CIV. P. 12(b)(6) .................... 4

FED. R. EVID. 201 .................... 4

## SUMMARY OF THE ARGUMENT

Plaintiff Roderick Whitley, a former Dallas ISD teacher, asserts claims against the District under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and 42 U.S.C. § 1983 related to his employment and resignation. In five "Counts," Whitley asserts: (1) "Title VII/ADA" retaliation claims; (2) ADA claims for "discrimination & interference;" (3) "Title VII/ADA" hostile work environment claims; (4) an FMLA interference claim; and a (5) Fourteenth Amendment procedural due process claim. *See* Complaint, Dkt. 3, ¶¶ 31–41. The Court should dismiss Whitley's claims for to failure to plausibly state a claim.

Whitley's retaliation claims fail because the Complaint lacks well-pleaded facts that he engaged in Title VII or ADA-protected activity before he resigned. Even if Whitley did plead that he engaged in protected activity before his employment ended, the Complaint does not plausibly allege a causal relationship between any protected activity and an adverse employment action. The Complaint, likewise, lacks factual allegations that plausibly show Whitley's purported disability played any role in an adverse employment action to state an ADA discrimination claim. And there are no pleaded facts that Whitley engaged in activity to exercise his rights under the ADA, or that the District interfered with such exercise of his ADA rights. Whitley's hostile work environment claims fare no better. The Complaint lacks factual content to plausibly allege the District subjected Whitley to severe or pervasive harassment because of his sex, disability, or other protected characteristic to state a claim. The Complaint, likewise, lacks well-pleaded facts to show the District interfered with Whitley's FMLA rights. Instead, the Complaint affirmatively pleads that Whitley received the leave he requested.

Finally, Whitley does not plausibly allege an underlying procedural due process violation. And the Complaint lacks well-pleaded facts that Dallas ISD's Board of Trustees, the District's policymaker, adopted an unconstitutional policy or acquiesced in a widespread, unconstitutional custom or practice that caused the violation. As a result, any Section 1983 claim against the District should be dismissed.

## RELEVANT FACTUAL ALLEGATIONS[1]

Dallas ISD employed Whitley as a teacher at Anne Frank Elementary School ("Anne Frank ES") from August 2016 until his resignation in June 2024. *See* Complaint, Dkt. 3, ¶¶ 11, 21. Whitley suffers from post-traumatic stress disorder ("PTSD") and anxiety. *Id.*, ¶ 11.

On March 20, 2023, Whitley allegedly had an "FMLA-related call" where he "was asked to 'open up and share' information concerning his disability and family history." *Id.*, ¶ 12. The Complaint avers that Anne Frank ES Principal Beverly Mullins-Ford "allowed for unauthorized eavesdropping by at least one faculty member" on the March 20, 2023 call. *Id.*

From April 3, 2023 until April 28, 2023, Whitley was on FMLA leave. *Id.*, ¶ 11. When he returned from leave, Principal Ford was the "Site Supervisor" for Whitley's "Educational Leadership Master's Degree program." *Id.* At some unspecified time, Principal Ford purportedly denied Whitley "leadership training" that was required for his "Principal Licensure practicum." *Id.*, ¶ 15.

According to the Complaint, in June 2023, Principal Ford made a "public, sexually charged" comment about Whitley's genital size in front of Anne Frank ES "staff." *Id.*, ¶ 13. Whitley alleges that between Spring 2023 and Summer 2024, Principal Ford and "other administrators" made "derogatory, personal comments" about Whitley's "mental health and trauma" and "intentionally attempt[ed] to exacerbate his known PTSD symptoms." Dkt. 3, ¶ 13. The Complaint does not provide any further details about the alleged comments or actions. *See* Dkt. 3.

According to the Complaint, on July 2, 2023, Principal Ford "secretly" added her supervisor, "Education Director" Temesghen Asmeron, to a call that Whitley initiated, which purportedly allowed Asmeron to "eavesdrop on [Ford's] discriminatory remarks." *Id.*, ¶ 14. The Complaint does not allege what remarks were made.

---

[1] Unless otherwise noted, the factual allegations set forth herein are taken from Whitley's Complaint and are presumed to be true solely for purposes of this Motion.

Whitley alleges that, in Summer 2023, he communicated with Assistant Principal Moises Mercado which "put [the District] on direct notice of the hostile work environment and discriminatory harassment." Dkt. 3, ¶ 16. The Complaint does not allege what Whitley stated to Mercado. Instead of taking remedial action, Whitley claims that Mercado and "other administrators" "escalated the harassment, attempted to cover up the harassment, or were complicit in the harassment." *Id.* , ¶ 16. The Complaint provides no information regarding what Mercado or the other unidentified "administrators" did.

In August 2023, the District allegedly removed Whitley from his Teacher Excellence Initiative ("TEI") Expert position, which resulted in a loss of supplemental pay. *Id.*, ¶ 17. Whitley alleges that throughout the 2023–2024 school year, unidentified administrators and staff engaged in "mobbing" and "micro-aggressions" based on his "mental health and career pursuits." *Id.*, ¶ 19. The Complaint provides no further information regarding the alleged "mobbing" and "micro-aggressions."

On June 28, 2024, Whitley claims he was constructively discharged. *Id.*, ¶ 21.

In Summer 2024, Whitley filed an "anonymous report" with the District. *Id.*, ¶ 23. He contends this is when he first engaged in protected activity. *Id.* The District conducted an "initial internal investigation." *Id.*, ¶ 18. Whitley alleges this investigation was not "impartial" because Principal Ford's supervisor conducted the investigation and did not include him. *Id.*

On September 20, 2024, Whitley filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission. *Id.*, ¶¶ 6, 23. In December 2024, the District responded to the Charge by submitting its Position Statement to the EEOC. *Id.*, ¶ 24.

On May 1, 2025, after Whitley learned about the District's nomination and selection of Principal Ford as "Principal of the Year," he filed an internal grievance. *Id.*, ¶ 25. On May 6, 2025, the District announced Principal Ford's selection as "Principal of the Year." *Id.*, ¶ 26.

On September 11, 2025, Whitley received a Notice of Right to Sue from the EEOC. *Id.*, ¶ 7.

In October 2025, the District conducted Level 1 and 2 hearings regarding Whitley's grievance under Board policy GF (Local) regarding Public Complaints. Dkt. 3, ¶ 29.[2] Whitley alleges that the District improperly argued the merits of the case "in hearings limited to the timeliness" of his grievance, which denied him a fair and impartial review. *Id.*, ¶ 29. Whitley does not allege that he appealed the Level 2 decision to the Board of Trustees as allowed by GF (Local). *See* Dkt. 3, *see also* **Exhibit A**, pp. 5–6.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations that, when assumed to be true, state a claim for relief that "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint pleads facts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id.* (citation omitted). Although a court must accept well-pleaded facts as true, neither conclusory allegations nor "legal conclusions masquerading as factual conclusions" are entitled to a presumption of truth. *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009); *see also Iqbal*, 556 U.S. at 678–79, 681. A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide "factual content" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[2] Dallas ISD asks the Court to take judicial notice of District Board policy GF(Local) under Federal Rule of Evidence 201. *See Van Deelen v. Cain*, 628 F. App'x 891, 894 & n.1 (5th Cir. 2015); *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("Judicial notice may be taken of matters of public record."); *Cantwell v. Sterling*, 788 F.3d 507, 509 (5th Cir. 2015) (taking judicial notice of grievance procedures in inmate handbooks). GF (Local) can be found online at https://pol.tasb.org/PolicyOnline/PolicyDetails?key=361&code=GF#localTabContent (last visited Jan. 2, 2026). Dallas ISD has attached a courtesy copy of GF (Local) to this Motion as **Exhibit A**.

## ARGUMENT AND AUTHORITIES

### I. The Complaint does not state a plausible retaliation claim because there are no well-pleaded facts to show Whitley engaged in Title VII or ADA protected activity or that any protected activity caused an adverse employment action.

In "Count 1" of the Complaint, Whitley alleges that the District took "materially adverse actions" against him, including awarding Principal Ford "Principal of the Year" in May 2025, because he engaged in protected activity. Dkt. 3, ¶ 32; *see also id.*, ¶ 26. Whitley fails to plausibly allege that he engaged in protected activity under Title VII or the ADA before he resigned his employment with the District. Whitley, therefore, fails to plausibly allege a Title VII or ADA retaliation claim. Even if he did engage in protected activity before the end of his employment, there are no well-pleaded facts that the protected activity caused any adverse employment action.

#### A. Standard for a Title VII and ADA retaliation claim.

To state a prima facie Title VII or ADA retaliation claim, a plaintiff must show that: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (Title VII). While "a plaintiff does 'not have to submit evidence to establish a prima facie case ... at [the pleading] stage,'" *Wright v. Union Pacific R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (citing *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)), a plaintiff must "plausibly allege facts going to the ultimate elements of the claim to survive a motion to dismiss." *Id.* (citation omitted).

An employee has engaged in protected activity when he "oppose[s] any practice made an unlawful employment practice by [Title VII or the ADA], or . . . mak[es] a charge, testif[ies], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII or the ADA]. 42 U.S.C. § 2000e–3(a); 42 U.S.C. § 12203(a). Internal complaints to employers may constitute protected activity, but such complaints must at least reference unlawful discrimination. *Phillips v. HCA*

*Healthtrust*, No. 3:19-cv-2642-D-BN, 2020 WL 5636947, at *3 (N.D. Tex. Aug. 19, 2020), *rec. adopted*, 2020 WL 5633852 (N.D. Tex. Sept. 21, 2020). A "vague complaint, without any reference to an unlawful employment practice . . . does not constitute protected activity." *Paske v. Fitzgerland*, 785 F.3d 977, 986 (5th Cir. 2015); *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). "[A]n employee cannot simply complain that [he] received unfair or undesirable treatment" to show he engaged in protected activity. *Carter v. Target Corp.*, 541 F. App'x 413, 418–19 (5th Cir. 2013).

"[A]n adverse action for the purposes of Title VII retaliation need only be one that a reasonable employee would have found 'materially adverse,' meaning 'it ... might have dissuaded a reasonable worker from making or supporting [protected activity].'" *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). An adverse employment action is one that "alters the terms, conditions, or privileges of employment." *See, e.g., Moye v. Tregre*, No. 22-30341, 2024 WL 65424, at *3 (5th Cir. Jan. 5, 2024) (per curiam); *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023).

### B. Whitley does not plausibly allege that he engaged in protected activity prior to the end of his employment with Dallas ISD and, therefore, he cannot show he suffered an adverse employment action because of such activity.

Whitley's retaliation claim fails because he does not allege he engaged in Title VII or ADA-protected activity that resulted in any adverse employment action. Whitley asserts that he "first engaged in protected activity when he filed an anonymous complaint in the summer of 2024" and, then, filed a "formal EEOC complaint on September 20, 2024," as well as an internal grievance on May 1, 2025. Dkt. 3, ¶¶ 22–25. This activity occurred after he resigned his employment with the District in June 2024. As a result, Whitley has not asserted—and *cannot* assert—that this post-employment protected activity caused an adverse *employment* action. It could not have affected a term, condition, or privilege of Whitley's employment because he was no longer a District employee. Indeed, the "adverse action" he alleges is Principal Ford's May 2025 receipt of the District's "Principal of the

Year" award. Principal Ford's receipt of an award, almost one year after Whitley left his employment with the District, is not an adverse employment action against Whitley. It had no impact on his employment. Even if it were an adverse employment action, Whitley does not plead facts sufficient to show that his protected activity was the "but-for" cause of Principal Ford's receipt of the award. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). At most, the Complaint asserts that Principal Ford received this award *despite* Whitley's EEOC Charge, anonymous report, and grievance; not *because* of them. Accordingly, any retaliation claim based on Whitley's post-employment anonymous report, EEOC Charge, or internal grievance should be dismissed because it did not result—and could not have resulted—in an adverse employment action against Whitley.

### C. The Complaint does not plausibly allege that Whitley's Summer 2023 communications with an assistant principal were protected activity or caused an adverse employment action.

In "Count I," Whitley does not reference any protected activity in which he engaged prior to the end of his employment. Dkt. 3, ¶¶ 31–32. To the extent that Whitley asserts that his communications with Assistant Principal Mercado in Summer 2023 were protected activity, the Complaint lacks well-pleaded facts to show Whitley reported or opposed unlawful employment discrimination in these communications. *Id.*, ¶ 16. Whitley asserts in conclusory fashion that Dallas ISD "was put on direct notice of the hostile work environment and discriminatory harassment in the summer of 2023, including through detailed communications with Assistant Principal [ ] Mercado." I*d.* Whitley does not plead facts regarding the substance of these communications to allow a reasonable inference that he was reporting, complaining about, or opposing unlawful sex or disability discrimination. *See, e.g.*, *Alusi v. City of Frisco, Tex.*, No. 4:22-CV-397-SDJ, 2023 WL 5509307, at *6 (E.D. Tex. Aug. 24, 2023) (mem. op.) ("Although Alusi has alleged that he complained of a hostile work environment to his supervisor, he does not allege that he complained of a hostile work environment based on his national origin, which is a required element for the complaint to serve as

the basis of Alusi's Title VII retaliation claim.").[3] Moreover, the Complaint does not identify an unlawful employment practice that occurred prior to Summer 2023, or plead facts that Whitley opposed any discriminatory employment practice in his communications with Mercado. *See Paske*, 785 F.3d at 986; *Davis*, 448 F. App'x at 493. In sum, the Complaint lacks factual content that these purported communications constitute protected activity under Title VII or the ADA.

Even if the Summer 2023 communications were protected activity, the Complaint lacks well-pleaded facts that these discussions resulted in any adverse employment action. The Complaint contains no facts that Mercado made anyone at the District aware of the communications. And Whitley does not allege that the communications resulted in any materially adverse action. The Complaint pleads no facts that the District's alleged removal of Whitley's supplemental TEI Expert duties related in any way to his communications with Mercado. And while Whitley alleges that he was constructively discharged on June 28, 2024 "due to intolerable working conditions," Dkt. 3, ¶ 21, he neither pleads facts to support a constructive discharge claim nor shows that the alleged constructive discharge was caused by his communications with Mercado.

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). To state a constructive discharge claim, the employee must show that his employer discriminated against him to the point where a reasonable person in his position would have felt compelled to resign and he did, in fact, resign. *Id.*; *accord Smith v. Lattimore Materials Co.*, 287 F. Supp. 2d 667, 672 (E.D. Tex.), *aff'd sub nom., Smith v. Lattimore Materials*, 77 F. App'x 729 (5th Cir. 2003) (ADA). "The evidence 'must

---

3 *See also Lumpkin v. Credit Human Fed. Credit Union*, No. 5:24-cv-00842-FB-RBF, 2025 WL 2647277, at *5 (W.D. Tex. Aug. 25, 2025) ("While Plaintiff does allege generally that he raised concerns about workplace discrimination and harassment…these vague allegations alone are not enough to plausibly plead a claim for retaliation under the ADA").

demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile environment.'" *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)). Whitley has not pleaded any such facts.

The Complaint alleges that Principal Ford made a one-time comment about Whitley's genital size in front of staff. Dkt. 3, ¶ 13. The Complaint also alleges that Principal Ford and other staff made unspecified "derogatory, personal comments about [Whitley's] mental health and trauma," and engaged in unidentified "mobbing" and "microaggressions" based on his mental health between Spring 2023 and Summer 2024. *Id.*, ¶¶ 13, 19. The vague, unspecified "derogatory" comments, "mobbing," and "microaggressions" are not the type of events the Fifth Circuit examines to determine whether a reasonable employee would feel compelled to resign. *Stover*, 549 F.3d at 991 (evidence that plaintiff "was not provided the same career development…her complaints of discrimination were not investigated; she was not allowed comp time…[her supervisor] exhibited anger, violence, shouting, and waved his arms" did not amount to conditions or an environment so intolerable a reasonable employee would feel compelled to resign). These allegations are not of the quality or extent to show that Whitley's "working conditions [had] become so intolerable that a reasonable person in his position would have felt compelled to resign.'" *Green*, 578 U.S. at 555.

Moreover, Whitley does not claim that these actions were calculated to encourage him to resign. *See Moore v. NBC Univ. Media, LLC*, No. 4:24-cv-01120-O-BP, 2025 WL 2308870, at *8 (N.D. Tex. May 19, 2025), *rec. adopted*, 2025 WL 1863113 (N.D. Tex. Jul. 7, 2025) (dismissing constructive discharge claim where employer subjected plaintiff to "taunting, escalated verbal harassment, embarrassment and additional work" but plaintiff did not claim this harassment was calculated to encourage her to resign); *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007)(dismissing constructive discharge claim under ADA because there was no evidence that the harassment was calculated to encourage the plaintiff's resignation.). Furthermore, the Complaint

pleads no facts that any of the alleged comments, "mobbing," or "microaggressions" were because of—or even related to—Whitley's communications with Mercado.

In sum, the pleaded facts do not plausibly show that Whitley was subjected to an adverse employment action as a result of engaging in Title VII or ADA-protected activity. *See Gaumond v. City of Dall.*, No. 3:21-CV-00624-E, 2023 WL 2061170, at *6–7 (N.D. Tex. Feb. 15, 2023) (mem. op.). Accordingly, Whitley's Title VII and ADA retaliation claims should be dismissed.

## II. The Complaint lacks well-pleaded facts to state a plausible disability discrimination or interference claim under the ADA.

In "Count II," Whitley alleges that the District "engaged in unlawful interference, coercion, and intimidation (including eavesdropping, derogatory and stereotypical statements concerning [his] disability, and malicious questioning)" in violation of the ADA. Dkt. 3, ¶ 34. Other than these conclusory assertions, the Complaint contains no facts regarding the alleged statements or questioning. *See* Dkt. 3. These allegations are insufficient to show Whitley suffered an adverse employment action or that Dallas ISD engaged in any purported "unlawful interference." And there are no well-pleaded facts that the District took any action against Whitley because of his alleged disability.

### A. Whitley fails to plead any facts to show he was subjected to an adverse action based on his disability to support a disability discrimination claim.

To state a prima facie ADA discrimination claim, a plaintiff must show that: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability. *Martin v. Penske Logistics, LLC*, 736 F. Supp. 3d 437, 457 (N.D. Tex. 2024) (citing *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)). An adverse employment action consists of "*ultimate employment decisions* such as hiring, granting leave, discharging, promoting, and compensating." *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 (5th Cir. 2018) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (emphasis in original). Here, Whitley has not plausibly alleged an adverse employment action taken *because of* his disability.

The facts in "Count II" do nothing to show Whitley experienced an adverse employment action because of his disability. Dkt. 3, ¶ 34. In a paragraph in the Complaint titled "Discrimination/Failure to Train," Whitley alleges that, at some point, Principal Ford denied him "leadership training" required for his "Principal Licensure practicum." *Id.*, ¶ 15. He also claims that Principal Ford assigned him unspecified "trivial tasks," which "plac[ed] him at a disadvantage compared to similarly situated participants." *Id.* But the alleged failure to train, and assignment of unspecified trivial tasks, are not ultimate employment decisions or even a materially adverse employment action. The Complaint lacks any well-pleaded facts that the lack of training or assignment of purportedly "trivial tasks" materially affected Whitley's employment with the District. Whitley does not allege that he failed the practicum or that any of Principal Ford's actions affected his ability to obtain an administrator certification. *See Berrios v. Miller*, No. EP-22-cv-00139-DCG-MAT, 2024 WL 40218, at *4 (W.D. Tex. Jan. 3, 2024) ("Allegations of unpleasant work meetings, verbal reprimands, and unfair treatment do not constitute actionable adverse employment actions[.]").

Even if Principal Ford's alleged denial of leadership training was an adverse employment action, which it is not, Whitley does not plausibly allege the denial was because of his disability. Indeed, the Complaint lacks any facts that Principal Ford had, or acted upon, any animus based on Whitley's alleged disability. Whitley pleads no facts that connect discriminatory intent based on disability with the purported denial of leadership training or assignment of trivial tasks. Although Whitley conclusorily alleges he was placed at a disadvantage compared to "similarly-situated participants," the Complaint lacks facts to support that individuals who were not disabled were treated more favorably than he was with respect to the leadership training. In fact, Whitley does not identify any other person who Principal Ford was supervising or assisting with a "Principal Licensure practicum." *Id.*, ¶ 15.

To the extent Whitley claims that the removal of his supplemental "TEI Expert" duties was an adverse action to support his ADA discrimination claim—which he does not allege—the

Complaint sets forth no facts that this decision was because of Whitley's disability. Dkt. 3, ¶¶ 17, 34. Because Whitley pleads no facts that plausibly suggest the removal of these supplemental duties was because of his disability, he does not state an ADA discrimination claim based on this purported adverse employment action.

The same is true for Whitley's assertion that he was constructively discharged. At the outset, Whitley's ADA claim does not reference his purported constructive discharge. or otherwise allege his constructive discharge was a result of disability discrimination. *Id.*, ¶¶ 17, 34. Even if Whitley had done so *and* plausibly alleged that he was constructively discharged—which he has not, as set forth *supra*, pp. 8–10—the Complaint is devoid of well-pleaded facts that Whitley was discriminated against based on his disability such that a "reasonable person in [his] position would have felt compelled to resign." *Green*, 578 U.S. at 555. Whitley conclusorily avers that: (1) Principal Ford and other unspecified "administrators" made "derogatory, personal comments about [his] mental health and trauma repeatedly"; (2) "intentionally attempt[ed] to exacerbate his known PTSD symptoms"; and (3) "administrators and staff engaged in 'mobbing' and micro-aggressions based on [his] mental health and career pursuits." Dkt. 3, ¶¶ 13, 19. But the Complaint does not plead what comments were made, does not identify any actions to allegedly exacerbate his PTSD symptoms, and does not provide any facts regarding the alleged "mobbing" or "micro-aggressions." Without such well-pleaded facts, the Complaint does nothing but raise a "sheer possibility" of disability discrimination, which is insufficient to plausibly state a claim. *Iqbal*, 556 U.S. at 678.

There are simply no pleaded facts that raise a reasonable inference that Dallas ISD took any employment action against Whitley due to his disability. Accordingly, Whitley fails to state a plausible disability discrimination claim under the ADA, and the Court should dismiss this claim.

### B. Whitley has not pleaded any facts to support a claim for interference with his rights under the ADA.

A plaintiff can establish an ADA interference claim by pleading facts to show "(1) coercion, intimidation, threats, or interference toward an individual, (2) on the basis of that individual's exercise or enjoyment, or having exercised or enjoyed, or aiding or encouraging others in exercising or enjoying, (3) any right protected under the ADA." *Strife v. Aldine Indep. Sch. Dist.*, 138 F.4th 237, 251 (5th Cir. 2025). The Seventh Circuit has added an additional element requiring that the employer be "motivated by an intent to discriminate." *Id.*

At the outset, Whitley does not allege that he exercised, or aided or encouraged others to exercise, any right protected under the ADA. The Complaint does not allege that Whitley ever requested any accommodation from the District related to his disability or otherwise attempted to exercise any rights related to his disability under the ADA. *See Strife,* 138 F.4th at 251. Although Whitley alleges that he took FMLA leave, a request for FMLA leave is not a request for a reasonable accommodation under the ADA. *Acker v. General Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). Moreover, the Complaint lacks factual content that Whitley's leave related in any way to his disability. Accordingly, Whitley's FMLA leave is not the exercise of any right protected under the ADA to support an ADA interference claim.[4] Because the Complaint lacks facts that Whitley exercised any right protected by the ADA, his ADA interference claim is a non-starter.

Even if Whitley could show he exercised any right protected by the ADA, the Complaint lacks well-pleaded facts to show the District engaged in any action to coerce, intimidate, threaten, or interfere based on his exercise of any ADA rights. The Complaint references alleged "eavesdropping" on a phone call, unrelated to his disability, unspecified "derogatory and stereotypical statements

[4] Even if FMLA leave were the exercise of a right protected under the ADA, Whitley acknowledges that he took FMLA leave and returned from FMLA leave. As noted *infra*, he fails to allege that the District interfered with his rights under the FMLA.

concerning [Whitley's] disability," and purported "malicious questioning" by the District. Dkt. 3, ¶¶ 14, 34. These conclusory assertions are insufficient to plausibly state an ADA interference claim. Whitley does not plead facts that the alleged "eavesdropping" had anything to do with his exercise of any purported ADA rights (or was even related to his alleged disability). *Id.*, ¶ 14. There are, likewise, no well-pleaded facts regarding the alleged "derogatory and stereotypical statements" or "malicious questioning" to allow a reasonable inference that they were even related to his disability. And there are no pleaded facts that the unspecified statements or questioning coerced, intimidated, threatened, or interfered with Whitley's exercise or enjoyment of a right protected under the ADA.

Because there are no well-pleaded facts to plausibly alleged that the District interfered with Whitley's rights under the ADA, his ADA interference claim should be dismissed.

## III. The Complaint lacks well-pleaded facts to support a Title VII or ADA hostile work environment claim.

In "Count III," Whitley alleges that he was "subjected to a hostile work environment based on his disability." Dkt. 3, ¶ 35. The Complaint is bereft of factual content to show Whitley experienced harassment because of his disability that affected a term, privilege or condition of his employment with Dallas ISD. And to the extent Whitley alleges a hostile work environment under Title VII based on his sex (or any other protected characteristic or activity), his claim fails for the same reason.

To state a hostile work environment claim under Title VII or the ADA, Whitley must show that (1) he belongs to a protected group, (2) he was subject to unwelcome harassment (3) based on a protected trait, (4) which affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 471 (5th Cir. 2021) (ADA); *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)

(quotations and citations omitted). "[D]etermining whether a hostile-work environment exists takes into account the totality of the circumstances, including such factors as: (1) the frequency of the conduct; (2) its severity; (3) the degree to which the conduct is physically threatening or humiliating; and (4) the degree to which the conduct unreasonably interferes with an employee's work performance." *Donaldson v. CDB Inc.*, 335 F. App'x 494, 501–02 (5th Cir. 2009). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1988) (cleaned up). The Fifth Circuit has a fairly high standard for severe or pervasive conduct. *Flowers v. S. Reg. Phys. Servs., Inc.*, 247 F.3d 229, 236 (5th Cir. 2001). To survive dismissal, a plaintiff must plead a "connection between his [protected status] and the harassment alleged … above the speculative level." *Raj v. La. State,*714 F.3d 322, 331 (5th Cir. 2013).

Whitley alleges that he was subjected to a hostile work environment when Principal Ford allegedly made a comment about his genital size, and that, between Spring 2023 and Summer 2024, Principal Ford and other administrators "repeatedly" made "derogatory, personal comments about [his] mental health and trauma[.]" Dkt. 3, ¶ 13. The Complaint also alleges that Anne Frank ES "administrators and staff engaged in 'mobbing' and micro-aggressions based on [Whitley's] mental health[.]" *Id.*, ¶ 19. Again, other than these conclusory assertions regarding comments, "mobbing," and "micro-aggressions," there are no pleaded facts regarding the substance or nature of the comments or actions to evaluate their severity or pervasiveness, or to show the comments or actions were based on Whitley's disability, sex, or other protected trait or activity.

Here, Whitley's hostile work environment claim should be dismissed because the Complaint does not plausibly allege that he was subjected to harassment based on a protected trait that affected a term, condition, or privilege of his employment. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788. With respect to any Title VII

hostile work environment claim based on sex, Whitley's allegation that Principal Ford made an isolated comment about his genital size is not sufficiently severe or pervasive to alter the conditions of Whitley's employment and create an abusive working environment. *See Pena v. Dall. Police Ass'n*, No. 3:22-CV-0987-N-BH, 2023 WL 2146557, at *5 (N.D. Tex. Jan. 17, 2023), *rec. adopted*, 2023 WL 2143087 (N.D. Tex. Feb. 21, 2023) (dismissing hostile work environment claim based on degrading comments, "including comments regarding Plaintiff's sex orientation [and] his sex organs" because none of these actions were severe or pervasive).[5]

Similarly, Whitley's vague allegations regarding unspecified "derogatory, personal comments" do not meet the requisite level of severity to state a claim for a hostile environment or show they were based on his disability. *See Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 502, 506 (5th Cir. 2002) (allegations that supervisor made derogatory comments about plaintiff's PTSD and depression diagnoses and work recommendations were not sufficiently severe or pervasive to establish a hostile work environment based on disability); *Moore*, 2025 WL 2308870, at *7 (allegations that plaintiff was verbally abused, embarrassed, and yelled at did not meet the requisite level of severity needed to state a claim for a hostile work environment). Although Whitley alleges that administrators and staff "repeatedly" made these comments, he "fails to provide details that would allow the Court to draw the reasonable inference that this harassment was pervasive." *See Vargas v. Panini America, Inc.*, No. 3:23-cv-2689-B, 2025 WL 1347479, at *4 (N.D. Tex. May 8, 2025); *Pena*, 2023 WL 2146557, at *5 (finding degrading comments, micromanagement, shaming, and critiquing work that occurred "almost on a daily basis" were neither severe nor pervasive). Whitley does not, for example, specify how frequently these comments were made. *See Vargas*, 2025 WL 1347449, at *4; *see also Thackston v. Driscoll*,

---

5 *See also Mosley v. Marion Cnty.*, 111 F. App'x 726, 728 (5th Cir. 2004) (three incidents involving racial slurs were insufficient to show actionable harassment); *Kemp v. Univ. of Tex. Health Sci. Ctr. NE*, No. 6:18-CV-00057-RWS, 2018 WL 11486505, at *5 (E.D. Tex. July 5, 2018), *rec. adopted*, 2018 WL 11486504 (E.D. Tex. Aug. 28, 2018) (dismissing hostile work environment claim based on alleged false progress reports and passive aggressive behavior as insufficient).

No. SA-24-CV-00276-FB, 2025 WL 938853, at *12 (W.D. Tex. Mar. 11, 2025) (finding a plaintiff failed to allege pervasive harassment under the ADA when he alleged that his coworkers "repeatedly" questioned plaintiff about his disability). Additionally, Whitley fails to provide any specificity regarding what "derogatory" or "personal comments" were made about his health. Such vague assertions fail to plead any connection between Whitley's disability or any other protected basis and the alleged harassment above the speculative level. *See Raj*, 714 F.3d at 331.

Finally, the Complaint lacks well-pleaded facts that the District knew or should have known of the harassment and failed to take prompt remedial action. While the Complaint alleges that the District was put on notice "through detailed communications with [ ] Mercado," Whitley pleads no facts regarding the substance of these communications to allow a reasonable inference that the District knew or should have known about any sex- or disability-based harassment and failed to respond. Dkt. 3, ¶ 16. In fact, Whitley pleads that he did not make his anonymous report or file any grievance until *after* his employment ended. *Id.*, ¶¶ 23, 25. And the Complaint acknowledges that when he actually filed a report, the District conducted an investigation, even though Whitley complains that the investigation was not impartial. *Id.*, ¶ 18.

Because Whitley does not plead facts to plausibly show he experienced unlawful harassment based on his sex, disability, or other protected trait—of which the District knew and failed to respond—the Court should dismiss Whitley's hostile work environment claims.

## IV. Whitley has not pleaded any facts to support a claim for interference with his rights under the FMLA, and the Court should dismiss his FMLA claim.

In "Count IV," Whitley claims the District interfered with his FMLA rights by "surveilling his protected communications and using his "medical need for leave as a negative factor in employment decisions." Dkt. 3, ¶ 36. These allegations do not plausibly state an FMLA inference claim.

To state a prima facie case of interference with an employee's exercise of their FMLA rights, an employee must show: "(1) he was an eligible employee; (2) his employer was subject to FMLA

requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). The Complaint lacks any well-pleaded facts that the District denied Whitley the benefits to which he was entitled under the FMLA. In fact, the pleaded facts negate this required element of an FMLA interference claim. The Complaint affirmatively states that the District afforded Whitley FMLA leave. Dkt. 3, ¶ 11.

Instead, Whitley alleges that the District interfered with the exercise of his FMLA rights when Principal Ford "allowed for unauthorized eavesdropping" by a faculty member on a March 20, 2023 "FMLA-related call" where he discussed his disability and family history. *Id.*, ¶ 12. Whitley does not allege how the alleged eavesdropping interfered with the exercise of his FMLA rights. Instead, he acknowledges he took leave on April 3, 2023, and returned on April 28, 2023. There are no allegations in the Complaint that the alleged eavesdropping interfered in any way with his entitlement to benefits under the FMLA. *See Arismendiz v. Univ. of Tex. at El Paso*, 536 F. Supp. 2d 710, 716 (W.D. Tex. 2008) (finding no interference with plaintiff's FMLA rights where plaintiff was not deterred from taking FMLA leave and she received the leave she sought); *Matson v. Sanderson Farms, Inc.*, 388 F. Supp. 3d 853, 873 (S.D. Tex. 2019) (*citing Smith v. Hope Sch.*, 560 F.3d 694, 698 n. 4 (7th Cir. 2009) (finding the FMLA provides a remedy for only those violations that "interfered with or restrained an employee's rights.")). The District is unaware of any case where having another person present for such a discussion constitutes FMLA interference.

And although Whitley contends that Dallas ISD used his medical need for leave as a "negative factor in employment decisions," Dkt. 3, ¶ 36, this does not support an FMLA *interference* claim. Even if it did, the Complaint provides absolutely no factual support for this conclusory assertion. There are no pleaded facts that plausibly suggest that the District based any employment decision on the fact that Whitley took FMLA leave. Whitley alleges no other facts about his FMLA leave except his

admission that he took leave and returned to work. In the absence of any factual allegations that could support a claim for interference with Whitley's FMLA rights, the Court should dismiss this claim.

## V. Whitley does not state a Fourteenth Amendment claim because he does not allege an underlying violation of his due process rights or that an official Board policy or custom was the moving force behind an alleged due process violation.

In "Count V," Whitley purports to assert a Fourteenth Amendment procedural due process claim under 42 U.S.C. § 1983. Dkt. 3, ¶¶ 37–41. Whitley contends the District deprived him of his procedural due process rights by "conducting a sham Level 1 and Level 2 Grievance Hearing" regarding his GF (Local) grievance concerning Principal Ford's receipt in May 2025 of the "Principal of the Year" award. *Id.*, ¶¶ 29, 38. Whitley complains that the District's counsel and hearing officer violated Board policy GF (Local) by "arguing the merits of the case in a hearing legally restricted to timeliness, thereby denying [Whitley] a fair and impartial review." *Id.*, ¶ 39. The Complaint alleges that the "District's policymaking officials (District Leadership and School Leadership Associate Superintendents)" ratified Ford's misconduct by granting her the award. *Id.*, ¶¶ 20, 28, 38, 40.

The Court should dismiss Whitley's claim because he cannot show he had any property or liberty interest to trigger due process protections. Moreover, the pleaded facts do not show Whitley was denied due process. In fact, Whitley failed to avail himself of the process available, which bars his claim. Even if Whitley could show an underlying due process violation, the Complaint is bereft of factual content to show that an official policy or custom of the District's Board of Trustees, as the District's final policymaker, was the moving force behind any purported violation, as required for entity liability under Section 1983. Likewise, Whitley pleads no facts that the *Board* ratified any purported violation of Whitley's constitutional rights to state a claim under a ratification theory.

### A. Overview of entity liability under Section 1983.

To state a Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). The existence of a constitutional violation is a "threshold" issue. *Peterson v. City of Fort Worth,* 588 F.3d 838, 844 (5th Cir. 2009); *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997).

The standard for suing a school district under Section 1983 is rigorous. A school district may be held liable only for acts for which it is actually responsible; vicarious liability and respondeat superior liability are prohibited. *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Under *Monell*, a plaintiff must show that the constitutional violation was the direct result of the execution of an "official" policy or custom, the custom or policy was approved or sanctioned by the entity's final "policymaker," and the final policymaker acted with "deliberate indifference," thus causing the plaintiff's injury. *See Piotrowski*, 237 F.3d at 578–79.[6]

Identifying the "final policymaker" is a question of state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). Under Texas law, the final policy-making authority for a school district is the district's board of trustees. *See* TEX. EDUC. CODE §§ 11.051(a), 11.051(a-1), 11.151(b); *see also Rivera*, 349 F.3d at 247. While he need not plead the specific identity of the policymaker, *see Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016), a Section 1983 plaintiff must show that the policymaker adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a persistent and widespread, or "deeply embedded," unconstitutional practice. *See Piotrowski*, 237 F.3d at 578–79; *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

[6] An official policy or custom is "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated" by the final policymaker or a "persistent, widespread practice" of the entity that is "so common and well settled as to constitute a custom that fairly represents [its] policy." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (citation omitted).

The unconstitutional conduct must be "directly attributable" to the final policymaker. *Rivera*, 349 F.3d at 247; *Bennett*, 728 F.2d at 768. A plaintiff must establish that the entity through its deliberate conduct "was the moving force behind the injury alleged" and must establish a direct causal link between the governmental entity's actions and the deprivation of a federally protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997). This requirement ensures that liability under Section 1983 is limited to "action for which the [entity] is actually responsible . . . that is, the acts which the [entity] has officially sanctioned or ordered." *Pembaur*, 475 U.S. at 479–80.

**B. The Complaint pleads no facts that Whitley had or was deprived of a constitutionally-protected interest.**

The Fourteenth Amendment's protection of an individual's due process rights includes a guarantee of procedural protections when a state seeks to deprive an individual of a protected liberty or property interest. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). To state a procedural due process claim, a plaintiff must first identify a protected life, liberty, or property interest and then show that governmental action resulted in a deprivation of that interest. *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 155 (5th Cir. 2017); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991). The existence of a constitutionally-protected interest is a threshold issue. "If there is no protected [ ] interest, there is no process due." *Spuler v. Pickar*, 958 F.2d 103, 106 (5th Cir. 1992).

The Complaint does not show that Whitley had a protected liberty or property interest. Notably, Whitley filed his grievance on May 1, 2025, which was almost a year after his employment with the District ended. And his grievance did not concern his employment with the District. Rather, it concerned the District's nomination and selection of Principal Ford as Principal of the Year. *See* Dkt. 3, ¶¶ 25, 38. Therefore, Whitley does not allege facts to show he had any protected property interest through an expectation of continued employment or otherwise.

Whitley, likewise, does not plausibly allege that Dallas ISD deprived him of a protected liberty interest. To establish the violation of a liberty interest, Whitley must show, among other things, that

he was stigmatized in connection with the denial of a right or status recognized by law. *See Thomas v. Smith*, 897 F.2d 154, 156 (5th Cir. 1989); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984). To state a claim for deprivation of a liberty interest, a plaintiff must show that: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to his discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer refused his request. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).[7]

Whitley's claims fail this test at each turn. Again, as noted above, Whitley was not discharged from the District; he resigned. Furthermore, the Complaint does not allege that the District made any false charges against Whitley in connection with his discharge, much less that the District published such false charges. Moreover, given that the District did not discharge Whitley, there was no due process requirement for notice or an opportunity to be heard either pre- or post-deprivation. Furthermore, Whitley's grievance was unrelated to his discharge or any charges made against Whitley; it was about Whitley's charges against Principal Ford. Accordingly, Whitley has not shown a deprivation of an underlying property or liberty interest to invoke due process protections.

Even if Whitley had identified a protected property or liberty interest, there are no pleaded facts that Whitley was deprived of that interest without due process. Whitley pleads that he received a Level 1 and Level 2 grievance hearing. *See* Dkt. 3, ¶ 29. He pleads no facts that he was denied the opportunity to be heard at these grievance hearings. Whitley's contention that the District argued the merits of the case as opposed to limiting its arguments to the timeliness of his grievance does not plausibly show he was deprived of due process with respect to his grievance. *Id.* If anything, it shows the opposite—that he was, in fact, given an opportunity to address his substantive allegations.

---

[7] The charges must be "worse than merely adverse," but also "such as would give rise to a badge of infamy, 'public scorn, or the like.'" *Hill v. Silsbee Indep. Sch. Dist.*, 933 F. Supp. 616, 626–27 (E.D. Tex. 1996) (quoting *Wells*, 736 F.2d at 256 n.16.

Moreover, the Complaint does not assert that Whitley appealed the Level 2 hearing decision to the Board by filing a Level 3 grievance, as set forth in Board policy GF (Local). *See* **Exhibit A**, pp. 5–6. Because Whitley failed to use all process the District made available to him, he cannot state a due process claim. *See, e.g., Vicari v. Ysleta Indep. Sch. Dist.*, 291 F. App'x 614, 616 (5th Cir. 2008) (per curiam) (affirming grant of summary judgment on assistant principal's due process claim for failure to utilize District's internal grievance process); *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir. 1989) ("[N]o denial of due process occurs where a person has failed to utilize the . . . procedures available to him."). Because Whitley does not plead facts to show the deprivation of a constitutionally-protected interest to trigger due process protections, or that the District denied any process he was due, Whitley does not plausibly allege a Section 1983 procedural due process claim.

### C. Whitley does not plausibly allege that an official policy or custom of the District's Board was a moving force behind a violation of his due process rights.

Even if the Complaint plausibly alleged an underlying due process violation, Whitley's Section 1983 claim should still be dismissed because he does not allege that an official policy or custom of the District's Board caused the purported constitutional violation to support entity liability. The Complaint does not identify any official Board policy or custom of that caused a violation of Whitley's due process rights. In fact, Whitley affirmatively pleads that the District's Board had a policy to give individuals an opportunity to be heard—GF (Local). Dkt. 3, ¶¶ 25, 29; *see also* **Exhibit A.** Rather, the gravamen of Whitley's due process claim is that District employees violated Board policy GF(Local). But when, as here, a governmental entity maintains constitutional policies, "those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127.

The exception is when, despite written policies to the contrary, a plaintiff can show a "persistent, widespread practice" of violating constitutional rights that is "so common and well settled

as to constitute a custom that fairly represents [its] policy." *Jett*, 798 F.2d at 759.[8] The Complaint contains no such allegations. Instead, Whitley's factual allegations relate solely to his own experience. Although he claims the Board's policies were not followed as to *him*, he does not plead any facts that would show the District had a custom of violating individuals' due process rights—much less a long and frequent pattern that the Board knew about and condoned. *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 413 (5th Cir. 2015) (even if there was a custom of racial discrimination by district employees against students, "[t]here is no evidence that the Board knew of this behavior or condoned it") (quoting *Rivera*, 349 F.3d at 250). Indeed, "[i]solated [constitutional] violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *see also Piotrowski*, 237 F.3d at 581.

Without any allegation that an official policy, custom, or practice of the District's Board was the moving force behind any alleged violation of Whitley's rights, the Complaint fails to state a Section 1983 claim against the District that is plausible on its face.

### D. Whitley's attempt to invoke a ratification theory of Section 1983 entity liability fails because he pleads no facts that the District's Board ratified any unconstitutional conduct.

Whitley tries to invoke a ratification theory of Section 1983 liability. But the Complaint does not allege that the District's Board, as the final policymaker, ratified any alleged constitutional violations in connection with Whitley's grievance or Principal Ford's alleged actions. Liability under a ratification theory may arise "when the municipality's policymakers condone or otherwise adopt the creation of a custom by knowingly ratifying the illegal or unconstitutional actions of subordinate, non-policymaking employees." *Santibanes v. City of Tomball*, 654 F. Supp. 2d 593, 611 (S.D. Tex. 2009) (citing

---

[8] "Where prior incidents are used to prove a pattern, they 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the entity's] employees." *Peterson*, 588 F.3d at 850.

*Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990). Absent "extreme factual situations," the Fifth Circuit refuses to hold an entity liable based on a ratification theory. *See Peterson*, 588 F.3d at 848.

Here, the Complaint does not allege that the Board ratified the District counsel and hearing officer's alleged due process violations in connection with the grievance. Similarly, there are no allegations that the Board ratified Principal Ford's alleged actions. Rather, the Complaint avers that "District Leadership and School Leadership Associate Superintendents" ratified Ford's "misconduct" by granting her the Principal of the Year Award. Dkt. 3, ¶ 28. There are no allegations that unspecified "District Leadership and School Leadership Associate Superintendents" were aware of Ford's alleged actions such that they could be said to have ratified them. More critically, however, it is the District's Board—not individual decisionmakers—that must ratify the alleged constitutional violations. The Complaint lacks any pleaded facts that the Board was aware of Whitley's allegations against Principal Ford. There are, likewise, no pleaded facts that the Board was involved in the determination of who would be designated "Principal of the Year." As such, the Complaint does nothing to show that the Board ratified any unconstitutional conduct to state a Section 1983 claim against the District under a ratification theory of liability. In any event, Principal Ford's alleged actions and any alleged procedural violations related to Whitley's grievance are not the type of extreme factual situations that can support a Section 1983 claim under a ratification theory.

Because this case does not present an "extreme factual situation" and, even if it did, there are no well-pleaded facts to show the Board ratified an unconstitutional policy or practice, the Court should reject Whitley's ratification theory and dismiss Whitley's Section 1983 procedural due process claim against the District.

Respectfully submitted,

/s/ *Kathryn E. Long*
KATHRYN E. LONG
klong@thompsonhorton.com
State Bar No. 24041679

K. ADAM ROTHEY
arothey@thompsonhorton.com
State Bar No. 24051274

DEANNA E. CALDWELL
dcaldwell@thompsonhorton.com
State Bar No. 24069455

**THOMPSON & HORTON LLP**
500 North Akard Street, Suite 3150
Dallas, Texas 75201
(972) 853-5115 – Telephone
(713) 583-8884 – Facsimile

*Attorneys for Defendant*
*Dallas Independent School District*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of this document has been served upon the Plaintiff via email on January 2, 2026.

Roderick Emil Whitley
4040 Spring Valley Road
Apt 107C
Dallas, TX 75244
bbminor1983@gmail.com

/s/ *Kathryn E. Long*
Kathryn E. Long